Filed 12/12/24  In re R.O. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re R.O., a Person Coming Under the Juvenile Court Law. | C099682 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JV-DP-2011-0000014) |
| Plaintiff and Respondent, | |
| v. | |
| A.I., | |
| Defendant and Appellant. | |

This is an appeal by appellant A.I. (mother) from a juvenile court's finding of jurisdiction in a dependency proceeding involving minor R.O.

The juvenile court originally took jurisdiction over the minor after converting a readiness conference into an uncontested jurisdictional hearing when mother failed to appear as ordered.  (*In re R.O.* (2022) 83 Cal.App.5th 586, 588.)  Concluding that the

1

juvenile court's actions denied mother due process, we reversed and remanded the matter for a new (contested) jurisdictional hearing, with directions that the question of jurisdiction must be answered "as of the date of the jurisdictional hearing." (*Id.* at p. 594, fn. 5.) For a variety of reasons, the jurisdictional hearing was not held until July 2023, more than two years after the original jurisdictional hearing. At the conclusion of the hearing, the court found the allegations of the petition true and took jurisdiction based, in part, on a finding that the minor falls within the provisions of Welfare and Institutions Code section 300, subdivision (b)(1).[1]

On appeal, mother contests the juvenile court's jurisdictional finding because it was based on outdated evidence of substance abuse and domestic violence. While mother admits her history of substance abuse and violent relationships would have supported a finding of jurisdiction back in 2021, she contends the factual allegations and evidence were not sufficient to support a finding of a substantial risk of harm " 'as of the date of the jurisdictional hearing' " in 2023. Without a showing of current risk of harm, she complains that the San Joaquin County Human Services Agency (the Agency) and the court improperly attempted to shift the burden to her to disprove the jurisdictional allegations against her. In particular, she complains that the juvenile court compelled her to submit to a pre-jurisdictional drug test and then faulted her for refusing to comply. We agree this was an error, and therefore reverse the jurisdictional and dispositional orders and remand for a new jurisdictional hearing.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2021, the Agency filed a juvenile dependency petition on behalf of the then ten-year-old minor R.O. The petition generally alleged that mother has a history of substance abuse and violent relationships that placed R.O. at risk of abuse and/or neglect

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

within the meaning of section 300 subdivision (b)(1), among other allegations.[2] The petition specifically identified four incidents of domestic violence between 2019 and 2021 in which law enforcement responded to calls involving domestic disputes occurring in the presence of R.O. The petition alleged that R.O. suffered or was at substantial risk of suffering serious physical or emotional harm as a result of being exposed to domestic violence.

The petition further alleged that mother was unable to adequately supervise, protect, or provide regular care to R.O. due to her "ongoing" abuse of methamphetamine and marijuana. The petition referenced a February 2021 incident during which law enforcement found methamphetamine in mother's sock. The petition alleged mother was "resistant to treatment and failed to maintain her sobriety, despite participating in multiple substance treatment programs."

Additionally, the petition alleged three previous petitions had been sustained on behalf of mother's children, including a 2011 petition involving R.O., and 2004 and 2006 petitions involving three of R.O.'s half-siblings. The petition alleged that mother's reunification services and parental rights were terminated as to the other children.

After a detention hearing, the juvenile court ordered R.O. detained and set a contested jurisdictional hearing. In advance of that hearing, the Agency filed a jurisdiction report.

In May 2021, when mother failed to appear at a readiness conference to confirm the contested jurisdictional hearing, the juvenile court conducted an uncontested jurisdictional hearing in her absence, found jurisdiction, and scheduled a dispositional

---

[2] The petition also alleged R.O. came within the jurisdiction of the juvenile court under section 300, subdivisions (c), (g), and (j), but those allegations are not relevant to this appeal.

hearing. Thereafter, at the dispositional hearing, the juvenile court adjudged the minor a dependent of the court and denied reunification services.

Mother appealed, arguing that the juvenile court violated her due process rights by converting the readiness conference into an uncontested jurisdictional hearing over her objection. (*In re R.O., supra*, 83 Cal.App.5th at p. 591.) In August 2022, we reversed the jurisdictional and dispositional orders and remanded the matter with directions to conduct a contested jurisdictional hearing. (*Id*. at p. 594.) We specifically directed that "the question of jurisdiction must be answered as of the date of the jurisdictional hearing." (*Id.* at p. 594, fn. 5) Remittitur issued on November 23, 2022.

In January 2023, the Agency filed a new jurisdiction/disposition report. Much of the report was a verbatim copy of the original jurisdiction and disposition reports filed in 2021. For example, the 2023 report repeated language from the 2021 disposition report stating that R.O. is not safe in mother's care due to her ongoing substance abuse, her "numerous unhealthy relationships," and her lack of insight into her problems despite numerous dependency cases involving domestic violence and substance abuse. It also repeated that mother had made little to no progress in her case and had not participated in any of the substance abuse treatment services to which she had been referred. The 2023 jurisdiction/disposition report did not identify any new evidence of substance abuse or domestic violence since 2021.

The Agency also filed an amended petition, adding a new count "b-1" to the section 300, subdivision (b)(1), jurisdictional allegations.[3] In relevant part, the new count alleged:

---

[3] The new count "b-1" originally contained four subparts, a. through d., but the Agency subsequently withdrew subparts a. and c. The Agency also agreed to withdraw a section 300, subdivision (c) jurisdictional allegation. A third amended petition, reflecting these changes, was filed on August 1, 2023.

"On or about September 8, 2022, the Appeals Court sent the matter back to the Superior Court to re-litigate the jurisdictional findings.  As of June 2023[,] the mother's history of substance abuse, violent relationships[,] and lack of suitable housing places the minor at risk of abuse and/or neglect, to wit:

[¶]

"b.  The mother has failed to demonstrate that she is living a sober lifestyle, free from any substance abuse[,] as the mother did not report to New Directions residential treatment as instructed and was subsequently terminated from drug court on April 2, 2021.  Since being terminated, the mother has made no attempts to be reinstated.

[¶]

"d.  The minor, [R. O.], remains fearful to return home with the mother. During a Child and Family Team Meeting held on May 26, 2023, the minor expressed that he is fearful to return home due to his worries of being harmed by someone that the mother may allow around the minor, as the mother has a history of being in violent relationships.  The minor has stated, 'it's not really safe over there' regarding the mother's living environment."

Mother filed a "demurrer" challenging the legal sufficiency of the amended petition.  (See *In re Alysha S.* (1996) 51 Cal. App. 4th 393, 397.)  Because there were no new allegations of drug abuse or domestic violence since March 2021, mother argued the allegations of the petition were not sufficient to support a finding of jurisdiction under section 300, subdivision (b)(1) at the time of the jurisdictional hearing.  The juvenile court overruled the demurrer.

The contested jurisdictional hearing began on July 21, 2023, with all parties present.  On the first day of the hearing, the juvenile court accepted a stipulated offer of proof as to the minor's testimony.  According to the offer of proof, the minor was not ready to return to mother because he had concerns about her past domestic violence relationships.  The minor indicated he had "been in that situation multiple times with

5

mother" and "didn't feel safe." The minor stated that he would be willing to return to mother in the future if she "continues to do her services and the individual or the family counseling continues or starts up and gets better . . . ." The court also accepted into evidence documents showing that (1) mother had tested negative when she was "propped"[4] (i.e., drug tested) in March 2021, and (2) mother had since completed a parenting class and partially completed a domestic violence treatment program.

Despite mother's prior negative drug test result, the Agency expressed concerns about mother's history of substance abuse and requested that she be drug tested again. The juvenile court agreed and, over counsel's objection, ordered mother to drug test that same day.

When the jurisdictional hearing resumed on July 25, 2023, the juvenile court noted mother did not drug test as ordered. The court commented that it was "disconcerting" that mother failed to test because her "whole basis" for opposing the petition was that she does not use narcotics. The court told mother that "[i]f they prove up jurisdiction today, you are drug testing today."

The juvenile court then heard testimony from the assigned social worker, who testified that she had no evidence that mother continued to use drugs or had been involved in any violent relationships in the two-and-a-half years since the original petition was filed. The social worker testified that she had spoken to mother about drug testing a couple of times since the case was assigned to her in September 2022, but mother was adamant that she no longer used drugs—citing the negative test result in March 2021—and "wasn't . . . receptive" to the idea of testing again.

Regarding R.O., the social worker testified that the minor was not currently in any form of counseling and had not demonstrated untoward or aggressive behavior towards

---

[4]     This is an apparent reference to the drug court parental recovery options plan program. (See *In re R.O., supra*, 83 Cal.App.5th at p. 588, fn. 2.)

6

himself or others or symptoms of substantial withdrawal or severe depression. When asked if the minor was suffering from severe anxiety, the social worker responded, "I'm not sure if I can gage [*sic*] that, I mean, I think he's been a little bit more anxious in the last few months . . . ."

On July 27, 2023, the final day of the contested jurisdictional hearing, the juvenile court heard closing arguments. The Agency argued that the court should find jurisdiction based on mother's history of substance abuse and domestic violence, her prior dependency cases, the four reported incidents of domestic violence in 2019 and 2021, and the 2021 arrest in which methamphetamine was found in mother's sock. The Agency argued that the court also could consider that mother refused to submit to drug testing to prove she was no longer using drugs. In addition, the Agency argued the court should consider that R.O. was "afraid" to return to living with mother because of her history of violent relationships. Minor's counsel made similar arguments.

Mother's counsel argued that it was the Agency's burden to prove mother *currently* posed a risk of harm to the minor and that the Agency failed to meet that burden. Counsel relied on the fact that when mother was drug tested in March 2021, the test came back negative. Counsel also noted that the Agency was no longer recommending that mother be bypassed for reunification services based on her history of substance abuse (§ 361.5, subd. (b)(13)), as it had in the prior (July 2021) disposition report. Absent evidence of current risk of harm to the minor, mother's counsel argued there was insufficient evidence to support a finding of jurisdiction under section 300, subdivision (b)(1).

The juvenile court found the allegations in the petition to be true and took jurisdiction over R.O. In making its ruling, the court acknowledged the Agency had the burden of proof, but the court stated that "when there is such a long history [of drug abuse] and then to go for a period of time and say I haven't had any present involvement. . . . It makes one skeptical." The court then explained that the parties were

7

losing sight of the interests of the minor: "[R.O.], as we sit here today, does not want to go home today. He does not want to go home because he has anxiety about his mother's drug addiction and the domestic violence that has occurred in the home . . . . Every report looks like he's done well [living with his uncle]. He's had very good visits with his mother, many good visits. He loves his mother, and in spite of him seeing his mother in all of those occasions he still doesn't want to go home today because he has safety concerns."

After finding jurisdiction, the juvenile court ordered mother to drug test and took a recess to await the results. When mother did not appear for the drug test, the court deemed the missed July 27, 2023, drug test to be an "administrative positive," made a detriment finding, and suspended mother's visitations with the minor.

On September 18, 2023, the Agency filed an amended disposition report, recommending that reunification services be offered despite the existence of grounds to bypass under section 361.5, subdivisions (b)(10) and (b)(11). At the disposition hearing on October 10, 2023, the juvenile court adopted the recommendations of the disposition report.

Mother filed a timely notice of appeal of the jurisdictional and dispositional orders. While the appeal was pending, the juvenile court reinstated mother's visitations with the minor.

## LEGAL BACKGROUND

" 'The purpose of California's dependency law is "to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." [Citation.] In its effort to achieve this overarching goal, the law balances a number of vital interests: children's interests in safe and stable homes; parents' interests in raising their children; families' shared interests in each other's companionship; and the state's interest in

8

protecting society's most vulnerable members.' " (*In re N.R.* (2023) 15 Cal.5th 520, 537.)

A dependency proceeding under section 300 is essentially a bifurcated proceeding. (*In re Stephen W.* (1990) 221 Cal.App.3d 629, 645.) First, at the jurisdictional stage, the court must determine whether the minor is within any of the descriptions set forth in section 300 and therefore subject to the juvenile court's jurisdiction. (*Ibid.*; §§ 300, 355-356.) Second, if the court finds jurisdiction, it must determine an appropriate disposition. (*In re Stephen W., supra*, at p. 645; §§ 300, 358.)

In this appeal, we are concerned with a jurisdictional finding based on section 300, subdivision (b)(1). That subdivision provides, in pertinent part, that a child may be adjudged a dependent if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness," as a result of "[t]he failure or inability of the child's parent or guardian to adequately supervise or protect the child," or "[t]he inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's . . . substance abuse." (§ 300, subd. (b)(1)(A), (D).) The petitioner in a dependency proceeding has the burden to prove by a preponderance of the evidence that the minor comes under the juvenile court's jurisdiction. (*In re Isabella F.* (2014) 226 Cal.App.4th 128, 137.) Thus, to establish jurisdiction, the Agency had to prove: (1) neglectful conduct in one of the specified forms; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*Id.* at pp. 139-140.)

It is not unusual for substance abuse or domestic violence to be part of the jurisdictional allegations under section 300, subdivision (b)(1). (1 Seiser & Kumli, Cal. Juvenile Courts Practice and Procedure (2024) § 2.84[3] & [14].) But a finding of jurisdiction cannot be based on prior drug abuse or domestic violence alone. Jurisdiction also requires a resultant negative impact on parenting, thereby causing serious physical harm, or a substantial risk of such harm, to the minor. (*In re N.R., supra*, 15 Cal.5th at

9

pp. 540, 556, 558-559 [substance abuse]; *In re J.A.* (2020) 47 Cal.App.5th 1036, 1046, 1048 [same]; *In re Rebecca C.* (2014) 228 Cal.App.4th 720, 727-728 [same]; *In re S.F.* (2023) 91 Cal.App.5th 696, 714-717 [domestic violence]; *In re Cole L.* (2021) 70 Cal.App.5th 591, 604 [same].)

Where jurisdictional allegations are based solely on risk of harm to the minor, "that risk must be shown to exist *at the time of the jurisdiction finding*."[5] (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 993, italics added.) While evidence of past conduct may be probative of current conditions, there must be some reason—beyond mere speculation—to believe the past conduct is ongoing or likely to recur, thereby exposing the minor to a substantial risk of harm. (*In re G.Z.* (2022) 85 Cal.App.5th 857, 877; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 717, disapproved on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 278; see also *In re Ma.V.* (2021) 64 Cal.App.5th 11, 22-23 ["stale" evidence of abusive relationship, resolved by the time of the hearing, insufficient to support jurisdiction].)

Here, the dependency petition alleged that R.O. was at substantial risk of harm because of his mother's substance abuse and involvement in violent relationships. Thus, at the jurisdictional hearing, it was the Agency's burden to demonstrate that mother's problems with drug abuse and domestic violence were ongoing or likely to recur, and thereby placed the minor at substantial risk of future physical harm.

---

**5**     We reject the Agency's contention that the "at the time of the hearing" rule should not apply in this appeal under *In re J.M.* (2019) 40 Cal.App.5th 913. *In re J.M.* held that it is in error to dismiss a petition for lack of sufficient evidence of *current* risk when the reason such evidence is lacking is because a parent wrongfully delayed the dependency proceedings. (*Id*. at pp. 921, 923.) That case has no application to a case such as this one, where the primary cause of delay is a parent's lawful and proper use of the appellate system.

DISCUSSION

Mother raises numerous challenges to the juvenile court's jurisdictional finding that R.O. falls within section 300, subdivision (b)(1). First, she argues that the juvenile court erred when it granted an order compelling her to submit to pre-jurisdictional drug testing and then relied on her resistance to establish jurisdiction. Second, she argues the court erred when it denied her "demurrer" because the allegations in the amended dependency petition were not sufficient to support a finding of jurisdiction. Third, she contends that even if the allegations stated a cause of action, there was insufficient evidence to sustain the court's jurisdictional finding. Finally, in addition to her jurisdictional arguments, mother challenges the order suspending her visitation with R.O. We conclude that mother's challenge to the sufficiency of the evidence supporting the drug testing order has merit and therefore find it unnecessary to address the other claims. We explain.

As our colleagues in the Fourth Appellate District have explained, "[b]efore jurisdiction is established through a finding that a minor is a person described by section 300, a juvenile court's authority to issue orders against a parent is limited and does not include the power to issue an order . . . compelling a parent to drug test." (*In re E.E.,* (2020) 49 Cal.App.5th 195, 202.) While the juvenile court can direct the social services agency to make services available, the court cannot order or compel the parent to cooperate with the agency or participate in the services offered. (*Id*. at pp. 208-209.) "A parent's participation in services, . . . is always voluntary."[6] (*Id*. at p. 209.)

The Agency asserts in its brief that the juvenile court merely "ask[ed]" mother to take a drug test, but the record belies this assertion. The court *ordered* mother to be drug

---

[6]     "That's not to say there are no consequences for failing to cooperate in [an] investigation or participate in services [offered]. One consequence is that those failures 'can be used later as evidence in a review hearing or a hearing on a [section 300] petition.' " (*In re E.E., supra*, 49 Cal.App.5th at p. 209; see also Evid. Code, § 1228.1.)

tested, stating: "Okay, I'm going to drug test her today and I'm going to tell you why. One, I think I still have jurisdiction to do so. And the prior report, the police report there's evidence the mom was using methamphetamines[;] there's allegations of that. [¶] Also[,] counsel doesn't have the [probation] records today that shows mom's tested clean for several weeks or months maybe. If mom's clean, she's clean. She'll test clean today and then I don't need those records. So she can object to it. I'm going to overrule her objection. We're going to have her drug tested today, and we'll find out the results next week, okay."

Counsel for the Agency and minor then urged the juvenile court to use mother's refusal to test as support for an inference that her substance abuse was ongoing, and the court was amenable to the argument: "You are arguing that [the Agency is] relying entirely on what happened a couple of years ago, okay, . . . . [¶] Then when the Agency recently has tried to ask mom to do things such as [drug test] . . . , she refused to do so. So they've tried. They couldn't force her to drug court. [B]ut when given the opportunity the mother is saying, she's quote, unquote, 'clean' [and] is not complying with the Agency." The court later referred to the missed drug test as mother's first "administrative positive." On this record, we are persuaded the juvenile court erred, not just by ordering mother to submit to the drug test before jurisdiction was established, but also by using her resistance to support the finding of jurisdiction.

We also are persuaded that this error was prejudicial. Applying the familiar *Watson* harmless error standard, we will reverse for error if it appears reasonably probable that a result more favorable to the appealing party would have been reached absent the error. (*In re Celine R.* (2003) 31 Cal.4th 45, 60; *People v. Watson* (1956) 46 Cal.2d 818.) That standard is met here. Although weak, mother's refusal to comply with the court-ordered drug test was the best evidence from which to infer she had an ongoing drug abuse problem despite her negative drug test in March 2021. The only other evidence was the social worker's vague testimony that she spoke to mother "a

12

couple of times" and encouraged her to "get propped," to which mother "wasn't really receptive."

Under the circumstances, we think it is reasonably probable the juvenile court would have reached a more favorable result but for the court's error in ordering mother to submit to a pre-jurisdictional drug test. Accordingly, we will reverse the jurisdictional and dispositional orders and remand this matter for a new jurisdictional hearing in which the juvenile court may assess whether mother currently poses a risk of harm to the minor.

Our ruling therefore renders it unnecessary for us to consider the other challenges to the jurisdictional order and the order suspending visitation.

### DISPOSITION

The juvenile court's jurisdictional and dispositional orders are reversed. The cause is remanded with directions to conduct a new jurisdictional (and, as necessary, dispositional) hearing consistent with this opinion.


_____\s\_____,
                            Krause, J.


We concur:


_____\s\_____,
Duarte, Acting P. J.


_____\s\_____,
Wiseman, J.*

_____

\*      Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13